# EXHIBIT A

This Document Prepared By:
**JULIAN JOAQUIN**
**FINANCE OF AMERICA MORTGAGE  LLC**
**15325 FAIRFIELD RD SUITE 200**
**CHINO HILLS, CA 91709**
**(888) 849-7442**

When Recorded Mail To:
**FINANCE OF AMERICA MORTGAGE  LLC**
**15325 FAIRFIELD RD SUITE 200**
**CHINO HILLS, CA  91709**

Tax/Parcel #:  24-004-521

_____ [Space Above This Line for Re

**Original Principal Amount: $127,543.00**
**Unpaid Principal Amount: $125,133.46**
**New Principal Amount: $122,080.68**
**New Money (Cap): $0.00**

## LOAN MODIFICATION AGREEMENT (MORTGAGE)

This Loan Modification Agreement ("Agreement"), made this **28TH** day of **MARCH, 2016**, between **CHRISTINA SANTIAGO, SOLE OWNER** ("Borrower"), whose address is **648 OSBORNE AVE, MORRISVILLE, PENNSYLVANIA 19067** and **FINANCE OF AMERICA MORTGAGE  LLC** ("Lender"), whose address is **15323 FAIRFIELD RANCH ROAD, STE 200,  CHINO HILLS, CA 91709** and given to Mortgage Electronic Registrations Systems, Inc. ("MERS") (solely as nominee for Lender, and Lender's successors and assigns), as beneficiary, MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834, tel. (888) 679-MERS, amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated **FEBRUARY 19, 2014** and recorded on **FEBRUARY 20, 2014** in **INSTRUMENT NO. 2014008416, BUCKS COUNTY, PENNSYLVANIA**, and (2) the Note, in the original principal amount of U.S. **$127,543.00**, bearing the same



date as, and secured by, the Security Instrument, which has been assigned MERS Registration No. **100070021650056942** and MERS Registration Date , and which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
**648 OSBORNE AVE, MORRISVILLE, PENNSYLVANIA 19067** the real property described is located in **BUCKS COUNTY, PENNSYLVANIA** and being set forth as follows:

**SEE ATTACHED EXHIBIT "A"**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of, **SEPTEMBER 1, 2015** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$122,080.68**, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. **$0.00** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **3.8750%**, from **SEPTEMBER 1, 2015**. The Borrower promises to make monthly payments of principal and interest of U.S. **$574.07**,, beginning on the **1ST** day of **SEPTEMBER, 2015,** and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **AUGUST 1, 2045** (the "Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. **If the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, by entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.**



Page 2

6.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7.  Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.



In Witness Whereof, I have executed this Agreement.

_____    4.1.16
Borrower: **CHRISTINA SANTIAGO**                Date

_____    _____
Borrower:                                      Date

_____    _____
Borrower:                                      Date

_____    _____
Borrower:                                      Date

_____ [Space Below This Line for Acknowledgments] _____

**BORROWER ACKNOWLEDGMENT**

**STATE OF PENNSYLVANIA**
**COUNTY OF** ___BUCKS___

On this, the _1ST_ day of _APRIL_, _2016_, before me
_MARY M. WEAVER_, the undersigned officer, personally appeared **CHRISTINA**
**SANTIAGO**, known to me (or satisfactorily proven) to be the person whose name subscribed to the within
instrument, and acknowledged that (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal

_____
Notary Public

Printed Name: _MARY M. WEAVER_

My Commission expires:
_Nov 8 2019_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Mary M. Weaver, Notary Public
Morrisville Boro, Bucks County
My Commission Expires Nov. 8, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Redacted                Page 4                Redacted

Mortgage Electronic Registration Systems, Inc.                                    Mortgagee

By _____


_____
Date

_____ [Space Below This Line for Acknowledgments]_____


COMMONWEALTH OF _____

COUNTY OF _____

On    this,    the    _____    day    of    _____,    20_____,    before    me
_____,    the    undersigned    officer,    personally    appeared
_____,    who    acknowledged    himself/herself    to    be    the
                                                  of Mortgage Electronics Registrations Systems, Inc., a
corporation, and that he/she as such _____ being authorized to do
so, executed the foregoing instrument for the purposes therein contained by signing the name of the
corporation by himself/herself as _____.


In witness whereof, I hereunto set my hand and official seal.



_____
Notary Public

Printed Name: _____

My commission expires: _____




Page 5



In Witness Whereof, the Lender have executed this Agreement.

**FINANCE OF AMERICA MORTGAGE LLC**

By **MARTIN BONANNO**                    (print name)                    April 13, 2016
**Senior Vice President**                    (title)                    Date

_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

**COMMONWEALTH OF** _____
**COUNTY OF** _____

On    this,    the    _____    day    of    _____,    20_____,    before    me

_____, the undersigned officer, personally appeared **MARTIN BONANNO**,

who acknowledged himself/herself to be the **SENIOR VICE PRESIDENT** of **FINANCE OF AMERICA**

**MORTGAGE LLC**, a company, and that he/she as such **SENIOR VICE PRESIDENT** being authorized to

do so, executed the foregoing instrument for the purposes therein contained by signing the name of the

company by himself/herself as **SENIOR VICE PRESIDENT**

In witness whereof, I hereunto set my hand and official seal.

Notary Public

Printed Name: _____
My commission expires: _____

See attached





---

**ACKNOWLEDGMENT**

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California

County of _San Bernardino_

On _4-29-16_ _____ before me, _____ **MARTHA ANAYA** _____,

A Notary Public personally appeared _Martin Bonanno_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

MARTHA ANAYA
Commission # 2001905
Notary Public - California
Orange County
My Comm. Expires Dec 23, 2016

(Seal)

Date: **MARCH 28, 2016**

RedactedRedacted

Lender: **FINANCE OF AMERICA MORTGAGE  LLC**

Borrower: **CHRISTINA SANTIAGO**

Property Address: **648 OSBORNE AVE, MORRISVILLE, PENNSYLVANIA  19067**

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____        4.1.16
Borrower: **CHRISTINA SANTIAGO**                        Date

_____        _____
Borrower:                                               Date

_____        _____
Borrower:                                               Date

_____        _____
Borrower:                                               Date

_____        _____
Borrower:                                               Date

_____        _____
Borrower:                                               Date

Redacted

Redacted

Date: MARCH 28, 2016

Redacted

Lender: **FINANCE OF AMERICA MORTGAGE LLC**

Borrower: **CHRISTINA SANTIAGO**

Property Address: **648 OSBORNE AVE, MORRISVILLE, PENNSYLVANIA 19067**

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of **FINANCE OF AMERICA MORTGAGE LLC**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____     4.1.16
Borrower: **CHRISTINA SANTIAGO**                              **Date**

_____     _____
Borrower:                                                    **Date**

_____     _____
Borrower:                                                    **Date**

_____     _____
Borrower:                                                    **Date**

_____     _____
Borrower:                                                    **Date**

_____     _____
Borrower:                                                    **Date**

Redacted

Page 8

Redacted

# CERTIFICATE OF RESIDENCE

**TITLE OF DOCUMENT**
**LOAN MODIFICATION AGREEMENT**

**BETWEEN:**
**CHRISTINA SANTIAGO** (assignor/Mortgagor/grantor)

**AND:**
**FINANCE OF AMERICA MORTGAGE LLC** (assignee/Mortgagee/grantee)

I do hereby certify that the precise address of the within named Mortgagee is:
**FINANCE OF AMERICA MORTGAGE  LLC**
**15323 FAIRFIELD RANCH ROAD, STE 200**
**CHINO HILLS, CA 91709**

By: _____

Print Name: _____

Title: _____

Redacted

Redacted

# NOTE

FHA Case No



| FEBRUARY 19, 2014 | HOLICONG | PENNSYLVANIA |
|---|---|---|
| [Date] | [City] | [State] |

**648 OSBORNE AVENUE, MORRISVILLE, PA 19067**
[Property Address]

## 1 PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns "Lender" means **GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES L P** and its successors and assigns

## 2 BORROWER'S PROMISE TO PAY, INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **ONE HUNDRED TWENTY-SEVEN THOUSAND FIVE HUNDRED FORTY-THREE AND 00/100** Dollars (U S **$127,543 00**), plus interest, to the order of Lender Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FOUR AND ONE-HALF** percent (4 **500%**) per year until the full amount of principal has been paid

## 3 PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument" The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note

## 4 MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **APRIL 1, 2014** Any principal and interest remaining on the first day of **MARCH, 2044,** will be due on that date, which is called the "Maturity Date "

### (B) Place

Payment shall be made at **300 WELSH ROAD, BUILDING 5, HORSHAM, PA 19044** or at such place as Lender may designate in writing by notice to Borrower

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U S **$646 24** This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument

### (D) Allonge to this Note for Payment Adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note [Check applicable box ]

☐ Graduated Payment Allonge        ☐ Growing Equity Allonge        ☐ Other [Specify] _____

## 5 BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the



Redacted

remainder of the month to the extent required by Lender and permitted by regulations of the Secretary If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes

## 6 BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of 15 calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent (4 000%) of the overdue amount of each payment

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults This Note does not authorize acceleration when not permitted by HUD regulations As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note

## 7 WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor "Presentment" means the right to require Lender to demand payment of amounts due "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid

## 8 GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address

## 9 OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note Lender may enforce its rights under this Note against each person individually or against all signatories together Any one person signing this Note may be required to pay all of the amounts owed under this Note

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note

Pay to the order of **MIDFIRST BANK**
without recourse
Gateway Funding Diversified Mortgage
Services, L P
By its General Partner Gateway Funding, Inc.

- BORROWER - CHRISTINA M SANTIAGO - DATE -

_____ *[Sign Original Only]*
Chris Thomas
Collateral Manager

**Redacted** **Redacted**

**Redacted**

**BUCKS COUNTY RECORDER OF DEEDS**
55 East Court Street
Doylestown, Pennsylvania 18901
(215) 348-6209

Instrument Number - 2014008416
Recorded On 2/20/2014 At 1:35:22 PM          * Total Pages - 12
* Instrument Type - MORTGAGE - CORPORATIONS
    Invoice Number - 643301          User - KGB
* Mortgagor - SANTIAGO, CHRISTINA
* Mortgagee - GATEWAY FND DVRS MTG SERV L P
* Customer - TOHICKON ABSTRACT CO
* FEES

| | |
|---|---|
| RECORDING FEES | $93.00 |
| TOTAL PAID | $93.00 |

Bucks County UPI Certification
On February 20, 2014 By MDM

**This is a certification page**

**DO NOT DETACH**

**This page is now part
of this legal document.**

**RETURN DOCUMENT TO:**
TOHICKON ABSTRACT CO

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Joseph J. Szafran, Jr.
Recorder of Deeds

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

**Redacted**

RECEIVED

After Recording Return To:
GATEWAY FUNDING DIVERSIFIED
MORTGAGE SERVICES, LP
300 WELSH ROAD, BUILDING 5
HORSHAM, PA 19044
(215) 591-0222

Tohickon Abstract company
P.O. Box 168
Holicong, PA 18928

2014 FEB 20  P 12: 12

BUCKS COUNTY
RECORDER OF DEEDS

Prepared By:
BRIAN LAPORTE
GATEWAY FUNDING DIVERSIFIED
MORTGAGE SERVICES L.P.
300 WELSH ROAD, BUILDING 5
HORSHAM, PA 19044
(215) 591-0222

Property Address:
648 OSBORNE AVENUE
MORRISVILLE, PA 19067

Redacted

[Space Above This Line For Recording Da Redacted

Redacted

**MORTGAGE**

THIS MORTGAGE ("Security Instrument") is given on **FEBRUARY 19, 2014**. The mortgagor is **CHRISTINA SANTIAGO, SOLE OWNER** ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS. **GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES L.P.** ("Lender") is organized and existing under the laws of **PA**, and has an address of **300 WELSH ROAD, BUILDING 5, HORSHAM, PA 19044**. Borrower owes Lender the principal sum of **ONE HUNDRED TWENTY-SEVEN THOUSAND FIVE HUNDRED FORTY-THREE AND 00/100** Dollars (U.S. **$127,543.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **MARCH 1, 2044**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located

FHA Pennsylvania Mortgage - 12/13
400.34





in **BUCKS** County, Pennsylvania:
SEE TITLE
which has the address of **648 OSBORNE AVENUE, MORRISVILLE**, Pennsylvania **19067** ("Property
Address");

TOGETHER WITH the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also
be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property."

Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower
in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender
and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not
limited to, the right to foreclose and sell the Property; and to take any action required of Lender including,
but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the
right to mortgage, grant and convey the Property and that the Property is unencumbered, except for
encumbrances of record. Borrower warrants and will defend generally the title to the Property against all
claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property.

Borrower and Lender covenant agree as follows:

**UNIFORM COVENANTS:**

1. **Payment of Principal, Interest and Late Charge**
   Borrower shall promptly pay when due the principal of, and interest on, the debt evidenced by the Note
   and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges**
   Borrower shall include in each monthly payment, together with the principal and interest as set forth in
   the Note and any late charges, a sum for

   (a) taxes and special assessments levied or to be levied against the Property,

   (b) leasehold payments or ground rents on the Property, and

   (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a
   mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or
   in any year in which such premium would have been required if Lender still held the Security
   Instrument, each monthly payment shall also include either

      (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or

      (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by
      the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly
      charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are
      called "Escrow Funds."



Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Sec. 2601 et seq. and implementing regulations, 12 C.F.R. Part 1024, as they may be amended from time to time (RESPA), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall deal with the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrowers account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.  **Application of Payments**

    All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

    - First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

    - Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

    - Third, to interest due under the Note;

    - Fourth, to amortization of the principal of the Note; and

    - Fifth, to late charges due under the Note.

4.  **Fire, Flood, and Other Hazard Insurance**

    Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

    In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either

    (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or

    (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal

Redacted

shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds**

Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned property. Borrower shall also be in default if borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation**

The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the Indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property**

Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard

FHA Pennsylvania Mortgage - 12/13
400.34                          Page 4 of 10



insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear Interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:

(a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender;

(b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lenders opinion operate to prevent the enforcement of the lien; or

(c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees**
Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt**

(a) **Default**. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval**. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver**. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary**. In many circumstances regulations issued by the Secretary will limit Lender rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

FHA Pennsylvania Mortgage - 12/13
400.34                    Page 5 of 10



(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

## 10. Reinstatement

Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:

(i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding,

(ii) reinstatement will preclude foreclosure on different grounds in the future, or

(iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

## 11. Borrower Not Released; Forbearance by Lender Not a Waiver

Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrowers successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

## 12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers

The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrowers covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note:

(a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument;

(b) is not personally obligated to pay the sums secured by this Security Instrument; and

(c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

## 13. Notices

Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by

FHA Pennsylvania Mortgage - 12/13
⊜ 400.34                                    Page 6 of 10



mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability**

This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end, the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy**

Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances**

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any Investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents**

Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each

FHA Pennsylvania Mortgage - 12/13



tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure**
**If Lender requires immediate payment in full under Paragraph 9, Lender may initiate foreclosure by judicial proceedings and/or invoke any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

19. **Release**
Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waiver**
Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy of sale, and homestead exemption.

21. **Reinstatement Period**
Borrower's time to reinstate provided in Paragraph 10 shall extend to one hour prior to the commencement of bidding at a Sheriff's sale or other sale pursuant to this Security Instrument.

22. **Purchase Money Mortgage**
If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

23. **Interest Rate After Judgment**
Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

24. **Riders to this Security Instrument**
If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants



and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)].

☐ Condominium Rider                    ☐ Growing Equity Rider          ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider       ☐ Graduated Payment Rider
☐ Other [specify]

   BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument
and in any rider(s) executed by Borrower and recorded with it.

- BORROWER - CHRISTINA X SANTIAGO - DATE -

[Space Below This Line For Acknowledgment]

STATE OF _Pennsylvania_

COUNTY OF _Bucks_

On this the _19_ day of _February_ _2014_, before me,
_Christina Santiago_, the undersigned officer, personally appeared

known to me (or satisfactorily proven) to be the person(s) whose name(s) are subscribed to the within
instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
James A. Nolan, Notary Public
Buckingham Twp., Bucks County
My Commission Expires Aug. 6, 2016
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Notary Public

My Commission Expires: _____

**Redacted**

| CERTIFICATE OF RESIDENCE |
| --- |
| I, _____ James A, Nolan _____ do hereby certify that the correct address of the within-named lender is 1901 E Voorhees Street, Suite C, Danville, IL 61834 or P.O. Box 2026, Flint, MI 48501-2026, witness my hand this **19TH** day of **FEBRUARY, 2014.** <br><br> _____ <br> Agent of Lender |

# Fidelity National Title Insurance Company

## SCHEDULE A
*(continued)*

### LEGAL DESCRIPTION

ALL THAT CERTAIN Lot or piece of ground with the buildings and improvements thereon erected, Situate in the Borough of Morrisville, County of Bucks and Commonwealth of Pennsylvania, being known as Lot No. 109 on a revised plan of Washington Heights dated August 3, 1948, being known as No. 648 Osborne Avenue, described as follows, to wit:

BEGINNING at a point in the northerly line of Osborne Avenue, said point being distant in a westerly direction five hundred feet from a stone monument in the westerly line of Cox Avenue and running thence: (1) along a two hundred feet radius curve to the South an arc distance of fifty feet to the easterly corner of Lot No. 108; thence (2) North fifty degrees twenty-nine minutes twenty- six seconds East one hundred nine feet and sixty-three one-hundredths of a foot along the easterly line of Lot No. 108 to a point in the southerly line of Lot No. 63 Block No. 31 Washington Heights Plan 1920; thence (3) North fifty-three degrees fifty minutes East seventy-six feet and sixty one-hundredths of a foot along the southerly line of Lots No. 63, 62, 61, and 60 Block No. 31 Washington Heights Plan 1920; thence (4) South thirty-six degrees ten minutes East one hundred feet along the westerly line of Lot No. 10 Block 31 Washington Heights Plan 1920 to the point and place of BEGINNING.

UNDER AND SUBJECT to certain conditions and building restrictions as now appear of record.

BEING TAX MAP PARCEL: 24-4-521

ALTA Commitment
Schedule A *(continued)*

57067696

## *BUCKS COUNTY RECORDER OF DEEDS*
**55 East Court Street**
**Doylestown, Pennsylvania  18901**
**(215) 348-6209**

**Instrument Number - 2018048595**
**Recorded On 9/4/2018 At 12:35:46 PM**            **\* Total Pages - 4**
**\* Instrument Type - MORTGAGE ASSIGNMENT**
   **Invoice Number - 959999            User -  KLJ**
**\* Mortgagor - GATEWAY FND DVRS MTG SERV L P**
**\* Mortgagee - FINANCE AMER MTG L L C**
**\* Customer - SIMPLIFILE LC E-RECORDING**
**\* FEES**
   **RECORDING FEES          $70.75**
   **TOTAL PAID              $70.75**

| Bucks County UPI Certification |
| :---: |
| On September 4, 2018 By TF |

| This is a certification page |
| :---: |
| **DO NOT DETACH** |
| This page is now part of this legal document. |

**RETURN DOCUMENT TO:**
**SEPC**
**1581 MAIN STREET&#10;SUITE 200**
**WARRINGTON, PA 18976**

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.





**Robin M. Robinson**
**Recorder of Deeds**

**\* - Information denoted by an asterisk may change during**
**the verification process and may not be reflected on this page.**

149545

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
24-004-521-          -          MORRISVILLE BOR
        CERTIFIED 09/04/2018 BY TF
```

**RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:**
Stern & Eisenberg, PC
1581 Main Street, Suite 200
The Shops at Valley Square
Warrington, PA 18976



MERS Phone Number: 1-888-679-6377

<u>THE ABOVE SPACE FOR RECORDING USE ONLY</u>

### ASSIGNMENT OF MORTGAGE
### PENNSYLVANIA

This **ASSIGNMENT OF MORTGAGE** from **Mortgage Electronic Registration Systems, Inc., as nominee for Gateway Funding Diversified Mortgage Services, L.P., Its Successors and Assigns** ("Assignor"), whose address is 1901 E. Voorhees Street, Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026 to **Finance of America Mortgage LLC** ("Assignee"), whose address is 300 Welsh Rd. Building 5, Horsham, PA 19044, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is acknowledged. **Mortgage Electronic Registration Systems, Inc., as nominee for Gateway Funding Diversified Mortgage Services, L.P., Its Successors and Assigns** ("Assignor") does hereby assign all of its right, title and interest as holder of, in and to the following described mortgage, the property described and the indebtedness secured by the mortgage to the above referenced Assignee.

*See Attached Exhibit A for Legal Description*

| | |
|---|---|
| Name of Mortgagor: | **Christina Santiago, sole owner** |
| Name of Mortgagee: | **Mortgage Electronic Registration Systems, Inc., as nominee for Gateway Funding Diversified Mortgage Services, L.P., Its Successors and Assigns** |
| Dated: | **02/19/2014** |
| Amount: | **$127,543.00** |
| Recorded: | **02/20/2014** |
| County: | **Bucks** |
| Book: | **N/A** |
| Page: | **N/A** |
| Instrument No.: | **2014008416** |
| Property Address: | **648 Osborne Avenue, Morrisville, PA 19067** |
| Tax ID#: | **24-4-521** |

1

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
August 24, 2018

Mortgage Electronic Registration Systems, Inc., as
nominee for Gateway Funding Diversified Mortgage
Services, L.P., Its Successors and Assigns

BY: _Ashley N. Rouse_

TITLE: _Assistant Secretary_

STATE OF _Virginia_
~~COUNTY~~ OF _Virginia Beach_ } s
city

AND NOW, this _24_ day of _August_ _____ 2018, before me, the undersigned Notary
Public, appeared _Ashley N. Rouse_ who acknowledged himself/herself to be the
_Assistant Secretary_ of Mortgage Electronic Registration Systems, Inc., as nominee for Gateway
Funding Diversified Mortgage Services, L.P., Its Successors and Assigns, and he/she, as such representative
being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the
name of the company by himself/herself as such representative.

IN WITNESS WHEREOF, I hereunder set my hand and official seal.

_Mildred Ann Nugent_
Notary Public
My commission expires _3.31.19_

MILDRED ANN NUGENT
NOTARY PUBLIC
REGISTRATION # 180946
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
3.31.19

I hereby certify that the address of the Assignee is:

300 Welsh Rd. Building 5, Horsham, PA 19044

By: _Barnes_

Name: _Tyreashia Barnes_

2

# Exhibit A

ALL THAT CERTAIN Lot or piece of ground with the buildings and improvements thereon erected, Situate in the Borough of Morrisville, County of Bucks and Commonwealth of Pennsylvania, being known as Lot No. 109 on a revised plan of Washington Heights dated August 3, 1948, being known as No. 648 Osborne Avenue, described as follows, to wit:

BEGINNING at a point in the northerly line of Osborne Avenue, said point being distant in a westerly direction five hundred feet from a stone monument in the westerly line of Cox Avenue and running thence: (1) along a two hundred feet radius curve to the South an arc distance of fifty feet to the easterly corner of Lot No. 108; thence (2) North fifty degrees twenty-nine minutes twenty- six seconds East one hundred nine feet and sixty-three one-hundredths of a foot along the easterly line of Lot No. 108 to a point in the southerly line of Lot No. 63 Block No. 31 Washington Heights Plan 1920; thence (3) North fifty-three degrees fifty minutes East seventy-six feet and sixty one-hundredths of a foot along the southerly line of Lots No. 63, 62, 61, and 60 Block No. 31 Washington Heights Plan 1920; thence (4) South thirty-six degrees ten minutes East one hundred feet along the westerly line of Lot No. 10 Block 31 Washington Heights Plan 1920 to the point and place of BEGINNING.

UNDER AND SUBJECT to certain conditions and building restrictions as now appear of record.

BEING TAX MAP PARCEL: 24-4-521

3

Redacted

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
24-004-521-        -        MORRISVILLE BOR
          CERTIFIED 11/29/2018 BY TF
```

PARCEL NO. 24-004-521
**PENNSYLVANIA**
COUNTY OF BUCKS

RedactedRedacted

WHEN RECORDED MAIL TO:
ATTN: ASSIGNMENT DEPT., FINANCE OF AMERICA MORTGAGE LLC C/O FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH. (208) 528-9895

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **FINANCE OF AMERICA MORTGAGE LLC F/K/A GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, L.P.** located at **300 WELSH ROAD BUILDING 5, HORSHAM, PA 19044,** Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto **MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION** located at **999 NW GRAND BOULEVARD SUITE 100, OKLAHOMA CITY, OK 73118,** Assignee, its successors and assigns, that certain Mortgage dated **FEBRUARY 19, 2014** executed by **CHRISTINA SANTIAGO, SOLE OWNER ,** Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, L.P., ITS SUCCESSORS AND ASSIGNS,** Original Mortgagee, in the amount of **$127,543.00** and recorded on **FEBRUARY 20, 2014** in the Office of the Register, Recorder, or County Clerk of **BUCKS** County, State of **PENNSYLVANIA,** as Document No. **2014008416,** more particularly described and commonly known as:

**AS DESCRIBED IN SAID MORTGAGE**
Property Address: **648 OSBORNE AVENUE, MORRISVILLE, PA 19067**
**BOROUGH OF MORRISVILLE**

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on **NOVEMBER 28, 2018.**
**FINANCE OF AMERICA MORTGAGE LLC F/K/A GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, L.P.**

**ADDISON RICE, VICE PRESIDENT**

STATE OF IDAHO                COUNTY OF BONNEVILLE    ) ss.

On **NOVEMBER 28, 2018,** before me, **VALENTIN SALCEDO,** personally appeared **ADDISON RICE** known to me to be the **VICE PRESIDENT** of **FINANCE OF AMERICA MORTGAGE LLC F/K/A GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, L.P.** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

**VALENTIN SALCEDO (COMMISSION EXP. 07/21/2022)**
**NOTARY PUBLIC**

```
VALENTIN SALCEDO
Notary Public - State of Idaho
Commission Number 68110
My Commission Expires Jul 21, 2022
```

Redacted

Page 1 of 2

Redacted

I do hereby certify that the precise address of the Assignee Residence is:
**MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION, 999 NW GRAND BOULEVARD SUITE 100, OKLAHOMA CITY, OK 73118**

**ADDISON RICE, VICE PRESIDENT**

Redacted

## BUCKS COUNTY RECORDER OF DEEDS
### 55 East Court Street
### Doylestown, Pennsylvania 18901
### (215) 348-6209

Instrument Number - 2018065350
Recorded On 11/29/2018 At 8:57:56 AM                    * Total Pages - 3
* Instrument Type - MORTGAGE ASSIGNMENT
  Invoice Number - 975150            User - SMC
* Mortgagor - FINANCE AMER MTG L L C
* Mortgagee - MIDFIRST BK
* Customer - SIMPLIFILE LC E-RECORDING
* FEES
  RECORDING FEES            $70.75
  TOTAL PAID               $70.75

Bucks County UPI Certification
On November 29, 2018 By TF

This is a certification page

# DO NOT DETACH

This page is now part
of this legal document.

RETURN DOCUMENT TO:
SECURITY CONNECTIONS INC
1795 INTERNATIONAL DRIVE
IDAHO FALLS, ID 83402

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.





Robin M. Robinson
Recorder of Deeds

* - Information denoted by an asterisk may change during
    the verification process and may not be reflected on this page.

14DB78

**Redacted**

PENNSYLVANIA
COUNTY OF **BUCKS**

**RedactedRedacted**

WHEN RECORDED MAIL TO:
ATTN: ASSIGNMENT DEPT., FINANCE OF AMERICA MORTGAGE LLC C/O FIRST AMERICAN MORTGAGE SOLUTIONS, 1795
INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH. (208) 528-9895

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **FINANCE OF AMERICA MORTGAGE LLC F/K/A GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, L.P.** located at **300 WELSH ROAD BUILDING 5, HORSHAM, PA 19044**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto **MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION** located at **999 NW GRAND BOULEVARD SUITE 100, OKLAHOMA CITY, OK 73118**, Assignee, its successors and assigns, that certain Mortgage dated **FEBRUARY 19, 2014** executed by **CHRISTINA SANTIAGO, SOLE OWNER** , Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, L.P., ITS SUCCESSORS AND ASSIGNS**, Original Mortgagee, in the amount of **$127,543.00** and recorded on **FEBRUARY 20, 2014** in the Office of the Register, Recorder, or County Clerk of **BUCKS** County, State of **PENNSYLVANIA**, as Document No. **2014008416**, more particularly described and commonly known as:

**AS DESCRIBED IN SAID MORTGAGE**
Property Address: **648 OSBORNE AVENUE, MORRISVILLE, PA 19067**
**BOROUGH OF MORRISVILLE**

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on **NOVEMBER 28, 2018**.
**FINANCE OF AMERICA MORTGAGE LLC F/K/A GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, L.P.**

**ADDISON RICE, VICE PRESIDENT**

STATE OF **IDAHO**          COUNTY OF **BONNEVILLE**     ) ss.

On **NOVEMBER 28, 2018**, before me, **VALENTIN SALCEDO**, personally appeared **ADDISON RICE** known to me to be the **VICE PRESIDENT** of **FINANCE OF AMERICA MORTGAGE LLC F/K/A GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, L.P.** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

**VALENTIN SALCEDO (COMMISSION EXP. 07/21/2022)**
NOTARY PUBLIC

VALENTIN SALCEDO
Notary Public - State of Idaho
Commission Number 68110
My Commission Expires Jul 21, 2022



Page 1 of 2



I do hereby certify that the precise address of the Assignee Residence is:

**MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION, 999 NW GRAND BOULEVARD SUITE 100, OKLAHOMA CITY, OK 73118**

**ADDISON RICE, VICE PRESIDENT**



Page 2 of 2